**Christopher HIGGINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A04–0203–CR–109.

Court of Appeals of Indiana.

Feb. 21, 2003.

Jon Aarstad, Vanderburgh County Public Defender, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Christopher Higgins appeals his conviction for residential entry, a Class D felony. We affirm.

### Issues

The issues before us are:

I. whether the trial court violated Higgins rights under the United States and Indiana Constitutions by instructing the jury that "the opening of a locked or unlocked door is sufficient" to establish that a breaking has occurred; and

II. whether the trial court properly refused to instruct the jury on the offense of criminal trespass.

### Facts

Debra Freson and Higgins were acquaintances. After a couple of encounters alone with Higgins during which he made unwanted sexual advances, Freson demanded that Higgins have no further contact with her. In the early morning hours of July 4, 2000, Freson, who was home alone, awoke and heard someone inside her house. Although Freson had made sure that her front door was locked before going to bed, she admitted that she did not routinely lock the back door, nor had she checked that night to see whether it was

locked. She did testify, however, that the back door was closed. Higgins eventually found Freson in the bedroom where she had been sleeping, calling her by her nickname; Freson insisted that he leave. Higgins, who had been to Freson's house once before, told Freson that he had entered through the back door.

The State charged Higgins with residential entry, and the case proceeded to a jury trial. Over objection, the trial court informed the jury in instruction four, "In order to establish that a breaking has occurred, the state need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry; the opening of a locked or unlocked door is sufficient." App. p. 53. The trial court also refused to give Higgins' tendered instruction and verdict form on the offense of criminal trespass, a Class A misdemeanor. The jury found Higgins guilty as charged, and he now appeals.

### Analysis

#### I. "Breaking" Instruction

Higgins first argues that the trial court's instruction regarding the residential entry

element of "breaking" violates his due process rights under the Fourteenth Amendment to the United States Constitution, as well as Article I, § 19 of the Indiana Constitution.[1] Specifically, he contends the instruction creates an impermissible mandatory presumption and relieves the State of its burden of proof on the "breaking" element of residential entry because the jury was told that the opening of a locked or unlocked door "is sufficient" to establish that a "breaking" occurred.

■ "Instructing the jury lies within the sole discretion of the trial court, and considering the instructions as a whole and in reference to each other, we will not reverse for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case." *Carter v. State*, 766 N.E.2d 377, 382 (Ind.2002). Higgins does not dispute that the trial court's instruction four accurately states the law: the opening of an unlocked door is sufficient evidence, as a matter of law, to support the "breaking" element of residential entry. *McKinney v. State*, 653 N.E.2d 115, 117 (Ind.Ct.App.1995). However, it is also true, as Higgins argues, that language

---

1. The State urges that Higgins has waived appellate review of this claim because a verbatim recitation of trial counsel's objection to instruction four is not found anywhere in the record on appeal or in Higgins' appellate brief. It does not appear that Higgins is entirely to blame for this omission; his notice of appeal requested a transcription of the trial, including "all objections and related argument by the defendant concerning jury instructions or proposed jury instructions...." App. p. 2. The trial transcript ends after the close of evidence and thereafter simply states, "CLOSING ARGUMENTS GIVEN, FINAL INSTRUCTIONS GIVEN, JURY RETIRES FOR DELIBERATION." Tr. p. 116. The Chronological Case Summary, however, does indicate that defense counsel stated "his objections to instructions on the record." App. p. 10. The State is correct that Higgins could have moved for the creation of a supplemen-

tal transcript, a "Statement of Evidence When No Transcript Is Available," or a "Correction or Modification of Clerk's Record or Transcript." *See* Ind. Appellate Rules 9(G), 31, and 32. We prefer to decide issues on the merits, however, and decline to penalize Higgins for the court reporter's failure to transcribe all of the discussions he requested and which the CCS indicates are part of the record. Furthermore, we observe that the instructional error Higgins claims occurred is viewed as fundamental error to which no contemporaneous objection is required, or that it is ineffective assistance of counsel not to object to such an instruction. *See Geiger v. State*, 721 N.E.2d 891, 896 (Ind.Ct.App.1999); *Walker v. State*, 769 N.E.2d 1162, 1171 (Ind. Ct.App.2002), *clarified on reh'g*, 779 N.E.2d 1158, *trans. denied* (2003). As such, we address this issue on the merits.

in an appellate opinion stating the rationale for a decision is not necessarily proper for use as a jury instruction. *Dunlop v. State,* 724 N.E.2d 592, 595 (Ind.2000). This specifically applies, inter alia, to appellate opinions holding that certain evidence was sufficient to support a conviction. *See id.*

■■■■ Higgins' claim that instruction four created an improper mandatory presumption favorable to the State can be separately analyzed under the United States and Indiana Constitutions. We first address his claim under the Due Process Clause of the Fourteenth Amendment to the federal constitution. That clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985) (citing *Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979)). Courts analyzing a claim of this sort must determine whether the challenged instruction creates a mandatory presumption or merely a permissive inference. *Id.* at 313–14, 105 S.Ct. at 1971. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Id.* at 314, 105 S.Ct. at 1971. An instruction relating a mandatory presumption violates the Due Process Clause if it relieves the State of the burden of persuasion on an element of an offense. *Id.* If an instruction in isolation reasonably could have been understood by a juror as relieving the State of its burden of persuasion on an element of

an offense, the potentially offending words must be considered in the context of all the jury instructions. *Id.* at 315, 105 S.Ct. at 1971. General instructions regarding the State's burden of proof and the defendant's presumption of innocence may be insufficient to correct such an error, however. *Id.* at 319–20, 105 S.Ct. at 1974. The *Francis* court held the following jury instructions to be unconstitutional:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.

*Id.* at 315, 105 S.Ct. at 1971–72. *See also Sandstrom,* 442 U.S. at 515, 99 S.Ct. at 2454 (holding unconstitutional jury instruction stating "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts"); *Geiger v. State,* 721 N.E.2d 891, 894 (Ind.Ct.App.1999) (holding unconstitutional jury instruction stating "[t]he law presumes an individual intends the consequences of his act").

We recently addressed a jury instruction similar in some respects to the instruction Higgins challenges, and which did not explicitly contain the word "presume," in *Walker v. State,* 769 N.E.2d 1162 (Ind.Ct. App.2002), *clarified on reh'g,* 779 N.E.2d 1158, *trans. denied* (2003). In that case, we considered whether the following instruction created a mandatory presumption in violation of the Due Process Clause in a trial for murder and attempted murder:

> It is a *fundamental principle* of law that . . . each person *is* criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even

though not intended as part of the original plan.

769 N.E.2d at 1168 (emphases in original). We held that this instruction did create an impermissible mandatory presumption, in that the jurors were instructed to presume the defendant, the accused non-shooter, had the same intent as the actual shooter, the defendant's companion. *Id.* at 1171. We engaged in a two-step analysis in reaching this conclusion: first, we found that the phrase "fundamental principle" connotes such a high degree of importance to whatever follows it that it created a presumption. *Id.* at 1170. Second, the word "is" made the presumption mandatory, not merely permissive, in that it mandated the jury to presume the defendant's intent. *Id.*

■ Here, as in *Walker*, the challenged jury instruction contained the word "is": "the opening of a locked or unlocked door *is* sufficient" to support the "breaking" element of residential entry. App. p. 53 (emphasis added). Unlike *Walker*, however, there was no language to the effect that this proposition was a "fundamental principle of law." The inclusion of this phrase was essential to our holding in *Walker* that the instruction created a presumption that the jury was mandated to apply. As such, *Walker* is not directly on point, and we decline to extend the reasoning of that case to hold that the mere inclusion of the word "is" in an instruction creates a mandatory presumption that violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We conclude that the instruction here, less strongly worded than in *Walker*, creates merely a permissive inference, not a mandatory presumption. Instruction four is not "cast in the language of command" of the type condemned by the *Francis* court. 471 U.S. at 316, 105 S.Ct. at 1972.

■ We now address Higgins' claim under Article I, § 19 of the Indiana Constitution, which provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." A mandatory instruction that binds the minds and consciences of the jury to return a verdict of guilty upon finding certain facts invades the province of the jury under this provision of Indiana's Constitution. *Curran v. State*, 675 N.E.2d 341, 344 (Ind.Ct.App.1996) (citing *Pritchard v. State*, 248 Ind. 566, 575, 230 N.E.2d 416, 421 (1967)). The essence of Higgins' argument is that because the jury was told that opening a locked or unlocked door "is" sufficient evidence of a breaking, the jury was bound to find that a breaking occurred if it found that Higgins opened a locked or unlocked door, and thus that he committed residential entry if the other elements were satisfied, even though this particular jury, guided by their minds and consciences, might rather have concluded that such evidence was not sufficient to establish a breaking. The giving of an impermissible mandatory instruction, however, does not necessarily constitute reversible error where it is accompanied by a contemporaneous instruction informing the jury that it is the judge of the law and the facts, as provided in Article I, § 19. *See Parker v. State*, 698 N.E.2d 737, 743 (Ind. 1998); *Mitchem v. State*, 503 N.E.2d 889, 891 (Ind.1987).

■ Even if we were to conclude that instruction four in this case, standing alone, violated Article I, § 19 of the Indiana Constitution and constituted a mandatory instruction that bound the jury to return a verdict of guilty upon the finding of certain facts, this would not be enough to reverse Higgins' conviction. One of the jury's other final instructions was instruction H, which informed the jury that it was given the right under the

Indiana Constitution to decide both the law and the facts. As such, no reversible error could result under the Indiana Constitution by the giving of final instruction four where it was accompanied by final instruction H. *See Johnson v. State,* 717 N.E.2d 887, 891–92 (Ind.Ct.App.1999). Nevertheless, we are of the opinion that instructions such as the one challenged here by Higgins, stating that certain evidence "is" sufficient to establish an element of a crime, should not be given in the future so as to avoid any potential conflict with either the United States or Indiana Constitutions. Instead, if the State desires an instruction similar to instruction four in this case, words or phrases such as "may," "may infer," "may consider," or "may look to" should be used in place of "is." *See Brown v. State,* 691 N.E.2d 438, 445 (Ind.1998) (holding that such phrases "are· indicative of permissive inferences, not mandatory presumptions.").[2]

## II. *Criminal Trespass Instruction*

 Next, Higgins contends that the trial court improperly refused to instruct the jury on the elements of criminal trespass, which he claims was a lesser included offense of residential entry. When called upon by a party to instruct a jury on a lesser included offense of the crime charged, a trial court must perform a three-step analysis. First, it must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. *Wright v. State,* 658 N.E.2d 563, 566 (Ind. 1995). Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime

charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. *Id.* at 567. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. *Id.* Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* It is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense if there is such an evidentiary dispute. *Id.* "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id.*

 Criminal trespass is not an inherently lesser included offense of residential entry. *See J.M. v. State,* 727 N.E.2d 703, 705 (Ind.2000). An offense is inherently included in a charged crime if a comparison of the relevant statutes indicates that:

(a) the parties could establish commission of the claimed lesser-included offense by proof of the same material elements or less than all of the material elements of the charged crime, or (b) the only feature distinguishing the claimed lesser-included offense from the charged

2. For example, a statement that "the opening of a locked or unlocked door *may be* sufficient" to establish that a breaking occurred would remove any doubt as to the instruction's constitutional validity.

crime is that a lesser culpability is required to establish commission of the lesser-included offense.

*Hauk v. State,* 729 N.E.2d 994, 998 (Ind. 2000). The elements of residential entry are (1) knowingly or intentionally (2) breaking and entering (3) the dwelling (4) of another person. Ind.Code § 35–43–2–1.5. Higgins' requested instruction tracked Indiana Code Section 35–43–2–2(a)(5), which lists the following elements for criminal trespass: (1) a person not having a contractual interest in the property (2) knowingly or intentionally (3) enters (4) the dwelling (5) of another person (6) without the person's consent. Thus, criminal trespass contains materially different elements that must be proven that are not found in the residential entry statute: for criminal trespass, the lack of a contractual interest in the property must be proven, as well as the owner's lack of consent to the entry, neither of which need be proven for residential entry. Additionally, the two crimes do not differ solely in terms of the requisite level of culpability; both require a mens rea of knowingly or intentionally. As such, criminal trespass is not inherently included in the offense of residential entry.

. Whether criminal trespass was factually included in residential entry in this particular case is a more difficult question. An offense is factually included if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. *Wright,* 658 N.E.2d at 567. Higgins contends that criminal trespass was factually included in residential entry in this case because the charging information alleges that he "did knowingly break and enter" Freson's dwelling, which implies the elements of lack of contractual interest in the property and lack of consent to the entry as required for criminal trespass. App. p. 34.

A relatively recent case from our supreme court supports this position. In *J.M. v. State,* 727 N.E.2d 703, 705 (Ind. 2000), our supreme court first noted the parties' agreement that criminal trespass is not inherently included in the offense of burglary. The juvenile defendant claimed that criminal trespass was not factually included in the burglary charge because the charging document alleged neither that he lacked a contractual interest in the property nor that there was a lack of consent to his entry. However, the court held "that by charging that J.M. did knowingly or intentionally 'break and enter' the residence of another person, the State sufficiently alleged facts constituting criminal trespass...." *Id.* Thus, it appears Higgins is correct that an information alleging that a defendant broke and entered a dwelling has been held sufficient to make criminal trespass a factually included lesser offense of burglary or residential entry, even though the information does not allege the defendant lacked a contractual interest in the property or the property owner did not consent to the entry.

We must note, however, that *J.M.* appears to conflict with several other cases from our supreme court that have addressed this issue. For example, in *Welch v. State,* 509 N.E.2d 824, 824–5 (Ind.1987), the court held the defendant "could not, by way of instruction to the jury, inject the lesser charge of criminal trespass," because the information charging the defendant with burglary did not allege that the defendant entered property in which he had no contractual interest as required for criminal trespass. Likewise, it was held in *Owens v. State,* 544 N.E.2d 1375, 1377–78 (Ind.1989), that where the burglary information did not include the lack of contractual interest element necessary for criminal trespass, the defendant was not entitled to an instruction on criminal tres-

pass as a lesser included offense of burglary. *Accord Jones v. State*, 456 N.E.2d 1025, 1028 (Ind.1983); *Goodpaster v. State*, 273 Ind. 170, 176, 402 N.E.2d 1239, 1243 (1980). *J.M.* did not mention *Welch, Owens, Jones*, or *Goodpaster*, and it did not explicitly overrule them. However, *J.M.* appears to us to be irreconcilable with the earlier cases, and we must assume they were implicitly overruled. Thus, we conclude that criminal trespass was a factually included lesser offense of residential entry in this case because the State alleged that Higgins did knowingly "break and enter" Freson's dwelling.[3]

█ We now address the third element of the *Wright* test, and conclude there was no serious evidentiary dispute regarding the distinction between residential entry and criminal trespass upon which Higgins focuses: whether he broke and entered Freson's dwelling or merely entered it. It is true that Freson was unsure whether her back door was unlocked, as she was not in the habit of locking it or checking to see whether it was locked. However, she testified unequivocally that the door was closed. Tr. p. 62. She also testified that Higgins had told her that he had entered through the back door because she "had left it unlocked," not because it was left open. Tr. p. 55. Freson's children were out of town with their father when this incident occurred. She was home alone, with the exception of her dog. Freson's testimony, which was the only evidence presented in this case, removes any serious evidentiary dispute about whether her back door was closed, and thus about

whether Higgins broke and entered or merely entered. All of the evidence points to a breaking; therefore, the trial court properly refused to give Higgins' jury instruction and verdict form on criminal trespass.

### Conclusion

The giving of the trial court's instruction four did not violate Higgins' rights under either the United States or Indiana Constitutions. We do, however, advise against the giving of similar instructions in the future. Higgins also was not entitled to inject criminal trespass into the case by way of a jury instruction. We affirm in all respects.

Affirmed.

BAKER, J., concurs.

VAIDIK, J., concurs in result with opinion.

VAIDIK, Judge, concurring in result.

I concur with the result of the majority but respectfully disagree with its reasoning as to the breaking and entering jury instruction. In my opinion, the breaking and entering jury instruction created an impermissible mandatory presumption, but I find that giving this instruction was harmless error.

As the majority points out, "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Here, the

---

**3.** We also observe that this conclusion seems to render meaningless the distinction between an inherently included and a factually included offense, where the offenses in question are burglary or residential entry and criminal trespass. We cannot perceive how the State could possibly draft an information charging a defendant with either burglary or residen-

tial entry without alleging that there was a breaking and entering, as that is an essential element of those crimes as provided by statute; thus, it would appear, criminal trespass will always be factually included in burglary or residential entry, even though it is not inherently included.

jury was instructed that the opening of a locked or unlocked door is sufficient to establish the essential element of breaking. In other words, the trial court instructed the jury that if the State proves that Higgins opened a locked or unlocked door, then that predicate fact was sufficient to establish the breaking. In my opinion, this instruction meets the definition of a mandatory instruction.

The majority attempts to distinguish this instruction from the instruction we found impermissible in *Walker* by pointing out that the *Walker* instruction contained the language "it is a fundamental principle of law." I am unconvinced that the absence of that language from the instruction in this case makes this instruction any less mandatory. The instruction here unequivocally told the jury that the opening of a door is sufficient to establish breaking. It is the word *is* that makes the instruction in this case mandatory. Had this jury instruction read that "the opening of a locked or unlocked door may be sufficient," no such mandatory conclusion would have followed.

Nevertheless, I view the giving of this instruction as harmless error. Generally, the manner in which the jury is instructed lies within the sound discretion of the trial court. *Hall v. State,* 769 N.E.2d 250, 253 (Ind.Ct.App.2002). A decision on the submission of jury instructions is only reversible by showing an abuse of that discretion. *Id.* at 253–54. A defendant is only entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Id.* at 254. Unlike in *Walker,* the subject of the mandatory instruction in this case was not in dispute. While in *Walker* the mandatory instruction dealt with the same contested issue the jury had to decide, namely, the intent of Walker; here, the mandatory instruction was not on an issue in dispute.

It was never in dispute that Higgins broke into Freson's house. Rather, Higgins argued that when he entered Freson's house, he mistakenly believed he had her consent to do so. I note that the jury was properly instructed on Higgins' mistake of fact defense, and, therefore, the giving of the breaking instruction did not mislead the jury or substantially prejudice the rights of Higgins. *See Swallows v. State,* 674 N.E.2d 1317, 1318 (Ind.1996) (declaring no fundamental error where trial court refused jury instruction on specific intent for attempted murder charge because intent was not put at issue during trial); *Sanders v. State,* 764 N.E.2d 705, 711 (Ind.Ct.App. 2002), *trans. denied, cert. denied,* —— U.S. ——, 123 S.Ct. 300, 154 L.Ed.2d 201 (2002).

I am concerned that the breaking and entering instruction tells the jury that "the state need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain *unauthorized* entry." Appellant's App. p. 53. As we have previously written, the use of the term *unauthorized* is confusing because it does not mean "authorization from the owner of the dwelling[;]" instead, it refers to "not authorized by the State, i.e. illegal." *Griesinger v. State,* 699 N.E.2d 279, 282 (Ind.Ct.App.1998) (quotation omitted), *trans. denied.* However, this instruction does not provide that the use of the slightest force equals an unauthorized entry. Instead, the instruction provides that the opening a door equals the slightest force necessary to satisfy the breaking element. Furthermore, any confusion which may have been caused to the jury by this instruction was cleared up by the court giving the instruction explaining that it was a defense that Higgins was under a mistaken belief, i.e., that he believed that he had consent to enter Freson's home. Therefore, while I believe the breaking instruction was an impermissible

mandatory instruction, the giving of it was harmless in that it did not prejudice the substantial rights of the defendant.