Myron OWENS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0811–CR–1052.

Court of Appeals of Indiana.

July 7, 2009.

Transfer Granted Oct. 1, 2009.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Myron Owens ("Owens") was convicted in Marion Superior Court of Class A felony dealing in cocaine within 1,000 feet of a youth program center, Class B felony possession of cocaine, Class D felony escape, Class D felony obstruction of justice, Class A misdemeanor resisting law enforcement and was also found to be a habitual offender. Owens appeals and presents two issues, which we restate as the following two:

I.   Whether the evidence was sufficient to support his conviction for dealing cocaine and obstruction of justice; and

II.  Whether his prior convictions are sufficient to support the habitual offender determination.

We affirm.

**Facts and Procedural History**

On October 22, 2007, detectives from the Indianapolis Metropolitan Police Department ("IMPD") were conducting an investigation into an area in Indianapolis known for illegal drug activity. The detectives performed what is termed a "buy bust," using a long-time paid confidential informant ("C.I."). IMPD Detective Ryan Graber ("Detective Graber") searched the C.I. prior to the buy, equipped him with a "Kel-set ... electronic listening-transmitting device," and gave him two ten-dollar bills that had previously been photocopied. Tr. p. 63.

The C.I. walked down 37th Street while Detective Graber observed the C.I. from

his car parked in an alley. Owens, who had been standing by the porch of a house on 37th Street, approached the C.I. and asked, "What do you need?" Tr. p. 163. The C.I. responded, "a twenty," meaning a rock of cocaine worth twenty dollars. *Id.* Owens said, "hold up," and he and the C.I. walked across the street. Owens then reached down and picked up a bag, took out a rock of what was later confirmed to be cocaine, and gave it to the C.I. The C.I. then gave Owens the two ten-dollar bills.

Owens then saw Detective Graber sitting in his car and approached him, motioning as if to ask him whether he wanted to purchase cocaine. Detective Graber motioned back to Owens and "waved him off." Tr. p. 170. Owens then walked over to a blue Buick while the C.I. returned to Detective Graber. Detective Graber and the C.I. drove away as Graber radioed a description of Owens to other detectives to let them know that the buy was complete. The C.I. gave the rock Owens had sold him to Detective Graber, which was later determined to be .1708 grams of cocaine. Detective Graber searched the C.I. after the buy and found no money.

IMPD Detective Chris Duckworth ("Detective Duckworth"), Kent Meier ("Detective Meier"), and Shawn Wininger ("Detective Wininger") had heard Detective Graber's description of Owens and came to the scene to arrest him. They saw Owens in a blue Buick which was being driven by his uncle. As he approached the vehicle, Detective Duckworth saw Owens put something in his mouth; when he looked closer, Detective Duckworth saw that Owens was chewing money. Detective Meier also saw Owens move his hands toward his mouth, Detective Wininger saw Owens put something in his mouth, and both detectives saw Owens chewing.

Owens refused to get out of the car when the detectives commanded him to do so. The detectives therefore had to remove him from the car. When they did so, he refused to comply with their commands that he give them his hands to be handcuffed. The entire time the detectives struggled with Owens, he was still chewing. It was at this time that Detective Wininger also saw that Owens was indeed chewing money. Owens flailed his arms and tried to reach for both his waist and his mouth. He also made an apparent attempt to grab Detective Duckworth's sidearm from its holster. After the police subdued Owens, both Detective Graber and the C.I. identified Owens as the person who had sold the cocaine.

Further investigation revealed that Owens was on home detention and had an ankle bracelet monitoring device. Detective Duckworth used a calibrated measuring wheel to determine that the location of the drug buy was over 955 feet away from Mount Zion Baptist Church Daycare Center ("the Daycare Center"). Detective Duckworth measured this distance by walking along the streets and sidewalks and did not go "as the crow flies" in a straight line. Detective Duckworth tested the measuring wheel by testing it against a yardstick to ensure that it was accurate. The Daycare Center takes care of children between the ages of eighteen months and twelve years and was open on the day of the cocaine buy.

On October 24, 2007, the State charged Owens with Class A felony dealing in cocaine within 1,000 feet of a youth program center, Class B felony possession of cocaine, Class D felony escape, Class D felony obstruction of justice, and class A misdemeanor resisting law enforcement. On July 9, 2008, the State filed an information alleging that Owens was a habitual offender. On October 6 and 7, 2008, a jury trial was held. At the conclusion of the trial, the jury found Owens guilty as charged

and also found that he was a habitual offender.

At a sentencing hearing held on October 23, 2008, the trial court "merged" the possession of cocaine conviction into the dealing in cocaine conviction, and imposed a fifty-year sentence on the dealing conviction. The trial court imposed concurrent three-year sentences on the escape and obstruction of justice convictions and a concurrent one-year sentence on the resisting law enforcement conviction. The trial court then applied a thirty year habitual offender enhancement to the dealing in cocaine conviction. Thus, Owens received an aggregate sentence of eighty years. Owens now appeals.

## I. Sufficiency of the Evidence

Our standard of review of a claim of insufficient evidence is well settled: we will neither reweigh the evidence nor judge the credibility of witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). Instead, we consider only the evidence supporting the convictions and the reasonable inferences that may be drawn therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

### A. Dealing in Cocaine

Owens claims that the evidence is insufficient to support his conviction of dealing in cocaine within 1,000 feet of a youth program center. In its charging information, the State alleged that Owens "did knowingly deliver to a confidential informant a controlled substance, that is: cocaine, and said delivery took place within one thousand (1000) feet of a youth program center, that is: Mt. Zion Baptist

Church Day Care Center[.]" Appellant's App. p. 25. This substantially tracks the controlling statute, which provides that a person who knowingly or intentionally delivers cocaine, pure or adulterated, commits dealing in cocaine. Ind.Code § 35-48-4-1(a) (2004). This crime is generally a Class B felony, but it is elevated to a Class A felony if "the person manufactured, delivered, or financed the delivery of the drug ... in, on, or within one thousand (1,000) feet of ... a youth program center." I.C. § 35-48-4-1(b)(3).

■ Owens first attacks his dealing conviction by arguing that the State failed to prove that the location of the Deal was within 1,000 feet of the Daycare Center.[1] Specifically, Owens complains that Detective Duckworth was "not an expert," and used an "ordinary yard stick" to calibrate the measuring wheel. A similar argument was rejected in *Charley v. State*, 651 N.E.2d 300 (Ind.Ct.App.1995). In that case, a police officer testified that he used a calibrated measuring wheel to determine the distance of a drug purchase from a school. The officer testified that he pushed a button on the wheel to reset the counter to zero, and measured a distance of 802 feet. He further testified that the device was working properly and that the measurement taken seemed consistent with other measurements he had taken in the area. A police detective further testified that he had tested the wheel for accuracy and that the wheel had not been damaged since that test. Upon appeal, the court held:

> Based upon the simple nature of the measuring device utilized here, we determine that [the police officer]'s testimony was sufficient to lay an adequate foundation prior to the admission of the distance of Charley's possession of co-

1.  Owens does not deny that the Daycare Cen- ter was a "youth program center."

caine from the school. Moreover, Charley has failed to present any evidence to indicate that the measuring wheel was inaccurate or unreliable. Accordingly, we conclude that the trial court did not abuse its discretion in admitting his testimony regarding the [distance].

*Id.* at 304.

■ Here, Detective Duckworth testified that the wheel was calibrated prior to use and that he had used the wheel to take accurate measurements in accident reconstruction. He explained that he tested the accuracy of the wheel by using a yardstick. Owens does not refer us to any evidence that would indicate that the measuring wheel was otherwise inaccurate or unreliable. As in *Charley,* Owens's challenge to the accuracy of the measuring wheel must fail.[2] The evidence favorable to the conviction demonstrates that, using a calibrated measuring wheel, Detective Duckworth walked along streets and sidewalks and determined that the location of the drug buy was 955.4 feet from the daycare center. Obviously, if Duckworth had gone in a straight line, this distance would have been even shorter. The State therefore presented evidence sufficient to establish that Owens delivered cocaine within 1,000 feet of a youth program center. Owens's arguments to the contrary are simply a request that we reweigh the evidence, which we will not do. *See Jones,* 783 N.E.2d at 1139.

■ Owens also claims that the State failed to prove that a cocaine buy occurred at all because the police did not see all of the interactions between the C.I. and Owens. He also notes that buy was not videotaped and claims that the audio recording was of poor quality. This, Owens claims, "calls into question" what happened during the transaction between Owens and the C.I. This is a bald request that we reweigh the evidence, which we repeat we will not do on appeal. *See Jones,* 783 N.E.2d at 1139. The evidence favoring the conviction, including the testimony of the C.I., clearly establishes that Owens gave the C.I. cocaine in exchange for twenty dollars. Detective Graber testified that he saw Owens retrieve an item from a bag and hand it to the C.I., who handed Owens the buy money in exchange. The C.I. gave this item to Detective Graber and testing confirmed that it was cocaine. This evidence established that Owens delivered cocaine to the C.I., and Detective Duckworth's testimony established that the delivery took place within 1,000 feet of a youth program center. We therefore conclude that the State presented sufficient evidence to support Owens's conviction for dealing in cocaine.

### B. Obstruction of Justice

■ Owens also claims that the State failed to present sufficient evidence to support his conviction for obstruction of justice. Here, the State alleged that Owens "did knowingly or intentionally alter, damage, or remove a record, document, or thing, that is: suspected cocaine and United States currency, with the intent to prevent said suspected cocaine and United States currency from being produced or

2. The State claims that Owens's argument regarding the wheel is actually that the foundational requirements for the admissibility of the evidence regarding the measuring wheel. The State also notes that Owens did not object on these grounds at trial, and argues that Owens has therefore waived this argument. To the extent that Owens's argument is one regarding the admission of evidence, we agree with the State that he has failed to preserve this issue for appeal. *See Collins v. State,* 835 N.E.2d 1010, 1016 (Ind.Ct.App. 2005) (a party may not object on one ground at trial and raise a different ground on appeal), *trans. denied.*

used as evidence in an official proceeding or investigation." Appellant's App. p. 26. This substantially tracks the language of the controlling statute. *See* Ind.Code § 35–44–3–4(a)(3) (2004). On appeal, Owens argues, "the police had EMTs check out ... Owens after the arrest, but did not request either the EMTs or anyone at [the hospital] to monitor him in an attempt to retrieve what he had eaten in order to determine whether he had, in fact, eaten the marked buy money." Appellant's App. p. 11.

Essentially, Owens claims that the police should have attempted to collect the remains of the money from his stool after it had passed through his digestive system. We disagree. First, such extreme measures were unnecessary. The police saw Owens put something into his mouth, and two detectives saw that the substance in Owens's mouth was money. Detective Graber searched the C.I. before the buy and gave him two ten-dollar bills. He also saw the C.I. hand Owens the money in exchange for the cocaine, and when he searched the C.I. after the buy, the money was not found. From this, the jury could reasonably infer that Owens put the buy money in his mouth, chewed it, and swallowed it in an effort to destroy evidence of his guilt. Further, we agree with the State that the chances of identifying paper money that had passed through Owens's digestive tract are small, and we cannot fault the police for failing to attempt to retrieve the remnants of the money. The State presented sufficient evidence to support Owens's conviction for obstruction of justice.

## II. Habitual Offender Enhancement

■ Owens next argues that the trial court improperly applied the habitual offender enhancement to his sentence for dealing in cocaine. This requires us to interpret our habitual offender statute,

Indiana Code section 35–50–2–8 (2004 & Supp.2009) ("Section 8").

Penal statutes should be construed strictly against the State, and ambiguities should be resolved in favor of the accused. At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. And statutes concerning the same subject matter must be read together to harmonize and give effect to each.

*Weiss v. State,* 903 N.E.2d 557, 562 (Ind. Ct.App.2009) (quoting *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005) (footnote omitted)).

Subsection (a) of Section 8 generally provides that the State may seek to enhance a sentence if the defendant is a habitual offender, i.e. if the defendant has accumulated two prior, unrelated felony convictions. Two other subsections, however, limit the application of the general habitual offender enhancement when drug offenses are involved. First, Subsection 8(b) provides:

(b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

(1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction;

(2) the offense is an offense under IC 9–30–10–16 or IC 9–30–10–17; or

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

In other words, a trial court may not enhance a drug offense under Section 8 if the instant felony offense being enhanced is not delineated in Indiana Code section 35–50–2–2(b)(4) (2004 & Supp.2009) ("Section 2(b)(4)") and the defendant has not accrued two or more unrelated "dealing" convictions. *See Johnican v. State,* 804 N.E.2d 211, 216 (Ind.Ct.App.2004).

Here, Owens claims that the instant dealing offense is not listed in Section 2(b)(4) and also claims that he has not accrued two unrelated dealing convictions. The State concedes the former but contests the latter.[3] We agree with Owens and the State that Owens's instant conviction for dealing in cocaine is not delineated in Section 2(b)(4). The State contends, however, that Owens's dealing could properly be enhanced under the habitual offender statute because Owens has accumulated two unrelated dealing convictions. *See Johnican,* 804 N.E.2d at 216.

■ A similar question is presented by application of subsection (d) of Section 8, which deals with whether a prior unrelated felony may be used to support a habitual offender enhancement:

(d) A conviction does not count for purposes of this section as a prior unrelated felony conviction if:

(1) the conviction has been set aside;

(2) the conviction is one for which the person has been pardoned; or

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

In other words, a prior conviction for dealing or possession of an illegal drug does not count for habitual offender purposes if

---

**3.** Dealing in cocaine is listed in Section 2(b)(4), but only if "the court finds the person possessed a firearm ... at the time of the offense, or the person delivered or intended to deliver to a person under eighteen (18) years of age at least three (3) years junior to the person and was on a school bus or within one thousand (1,000) feet of ... a youth program center." Here, the State concedes that there is no indication that the court found that Owens possessed a firearm at the time of the offense or that he delivered or intended to deliver to someone under the age of eighteen and at least three years his junior.

that crime was not listed in Section 2(b)(4) and the defendant has less than two prior dealing convictions. *Weiss,* 903 N.E.2d at 561; *Williams v. State,* 834 N.E.2d 225, 230 (Ind.Ct.App.2005).[4] As it did with regard to Owens's instant conviction for dealing, the State does not claim that Owens's prior felony convictions are listed in Section 2(b)(4); instead, the State claims that Owens does have two prior felony convictions for dealing.

The State alleged and proved that Owens had three prior felony convictions: dealing in cocaine in 1995, carrying a handgun without a license in 1998, and conspiracy to deal in cocaine in 2004. The first of these is obviously a dealing conviction, and the second one is obviously not. The question presented here is whether Owens's prior conviction for conspiracy to deal in cocaine qualifies as a conviction for "dealing in cocaine" under Section 8(d)(3)(C)(ii). The State claims that this is a question of first impression in Indiana, and our research has revealed no case directly on point.

■ Section 8(d)(3)(C)(ii) refers to a conviction for "dealing in cocaine or a narcotic drug (IC 35–48–4–1)." To convict a defendant of conspiracy to deal in cocaine, the State has to prove that, with the intent to commit dealing in cocaine, the defendant agreed with another person to commit dealing in cocaine, and that either the defendant or the other person with whom he agreed performed an overt act in furtherance of the agreement. *Cockrell v. State,* 743 N.E.2d 799, 803 (Ind.Ct.App. 2001); Ind.Code § 35–41–5–2(a) (2004); I.C. § 35–48–4–1.

■ Here, with regard to his prior conspiracy conviction, Owens was charged with violating both the dealing statute, Indiana Code 35–48–4–1, which is specifically listed in Section 8(d)(3)(C), and also the conspiracy statute, Indiana Code section 35–41–5–2 (2004). Ex. Vol. p. 39. Further, a conspiracy to commit a felony is generally the same class as the underlying felony which the conspirators agreed to commit.[5] I.C. § 35–41–5–2(a). The State argues that "the only difference between the underlying charge and the conspiracy charge is that the inchoate liability of the conspiracy statute allows, though it does not necessarily require, law enforcement to interrupt the delivery before it is completed." Appellee's Br. p. 13. In fact, in Owens's prior conviction for conspiracy to deal in cocaine, the State alleged, and based on his conviction therefor, proved that the overt act in furtherance of the conspiracy was Owens's actual delivery of cocaine to a confidential informant. Ex. Vol. p. 39. Thus, to convict Owens of conspiracy to deal in cocaine, the State had to prove that Owens actually dealt in cocaine.

Under these particular facts and circumstances, we conclude that Owens's prior conviction for conspiracy to commit dealing is, for purposes of Section 8, a prior conviction for dealing in cocaine. *Cf. Lampitok v. State,* 817 N.E.2d 630, 643 (Ind.Ct. App.2004) (concluding that defendant's prior Illinois conviction for "dealing and conspiracy" was "an offense under IC 35–48–4" and therefore the limitations of Section

---

**4.** Although similar, subsections (b) and (d) serve different purposes. Subsection 8(b) limits the application of the general habitual offender enhancement based upon the nature of the instant offense. Subsection 8(d) limits the application of the general habitual offender statute based upon the nature of the prior,

unrelated convictions. *Compare Johnican,* 804 N.E.2d at 216, *with Weiss,* 903 N.E.2d at 561; *Williams,* 834 N.E.2d at 230.

**5.** "However, a conspiracy to commit murder is a Class A felony." I.C. § 35–41–5–2(a).

8(d)(3)(A) applied), *trans. denied;* [6] *Weiss,* 903 N.E.2d at 562 (holding that Section 8(d)(3)(C) is not "limited to a list of certain drug-related offenses involving actual dealing only, but ... includ[es] the offenses enumerated in each of the statutory provisions listed within the subsection," including Indiana Code section 35–48–4–1, i.e. dealing in cocaine).

Because Owens had two prior convictions for dealing in cocaine, the trial court could properly apply the habitual offender enhancement to the sentence imposed upon Owens's instant dealing conviction. The trial court did not err in sentencing Owens.

### Conclusion

The State presented sufficient evidence to establish that Owens delivered cocaine to the C.I. and that such transaction occurred within 1,000 feet of the Daycare Center. The trial court did not err in applying the habitual offender enhancement to Owens's sentence for dealing in cocaine.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

6. We recognize that *Lampitok* is not directly on point in that the focus of the court's holding was whether an out-of-state conviction counted as an offense under I.C. 35–48–4. *See* 817 N.E.2d at 643. And although the court spoke in terms of a single 1995 Illinois conviction, this conviction was for "delivery and drug conspiracy." *Id.* at 644. Thus, it is not entirely clear whether this was a simple conviction for conspiracy to deliver, or a conviction for both conspiracy and delivery.