**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 20 2013, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICKY EUGENE ARION, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 08A04-1203-CR-115 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CARROLL SUPERIOR COURT
The Honorable Kurtis G. Fouts, Judge
Cause No. 08D01-1108-FD-67

**March 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Ricky Arion (Arion), appeals his conviction for Count I, attempted residential entry, Ind. Code §§ 35-43-2-1.5; -41-1-5; and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Arion raises two issues, which we restate as follows:

(1) Whether the trial court abused its discretion by declining to issue Arion's proposed jury instruction regarding the presumption of innocence; and

(2) Whether the trial court abused its discretion by declining to issue a jury instruction on a lesser included offense of attempted criminal trespass.

## FACTS AND PROCEDURAL HISTORY

On August 17, 2011, in the early morning hours, a man walked onto the back deck of Mary DeFord's (DeFord) home in Delphi, Indiana. DeFord resided there with her poodle, Lilly. The back door of the home led out to the back deck and was locked. Lilly "bolted to the door with a growling bark" and DeFord peered out of a shade but did not see anyone. (Transcript Vol. I p. 31). Later that same day, DeFord checked her "trail cam," an infrared camera with a motion detector that she had set up on the deck. (Tr. Vol. I p. 27). Pictures from the camera depicted a man who was unknown to DeFord on her deck without her permission. The man had a fanny pack and a flashlight. One photo

2

depicted him "on the deck reaching for the doorknob." (Tr. Vol. II p. 19). DeFord called the police and showed them the trail cam pictures.

On August 19, 2011, again in the early morning hours, the same man returned to DeFord's back deck. That night, DeFord had left the outside lights on. Later that morning, DeFord checked her trail cam and saw pictures of the man on her back deck. DeFord went outside to investigate and a patio table had been moved from the deck to the yard. A green five gallon bucket, which had previously been on the deck, was found underneath one of the other windows of the house. DeFord gave the photos to the police.

Police investigated and examined the photos from the trail cam. The infrared photos illuminated a large, distinctive tattoo on the man's left bicep. The images were disseminated among the police. A police officer who knew Arion recognized the tattoo as similar to one Arion had. Arion came to the police station to have his upper body and tattoos photographed. Arion told police that the tattoo was "one of a kind, that no one else had had that tattoo." (Tr. Vol. I p. 72).

Police later obtained a warrant and searched Arion's truck and his residence, where he lived with his father. They seized items from Arion's truck, including a black, form-fitting long-sleeved shirt and tan colored work gloves. From Arion's garage, the police seized a flashlight with a black lanyard and which used triple A batteries; a black fanny pack with two triple A batteries; two pairs of shoes with some mud and grass on the bottoms; gray sweat pants soiled with dirt; a gray form fitting shirt; gray and maroon

3

colored work gloves, and a gray fabric shirt made into a skull cap. Arion was subsequently arrested.

On August 22, 2011, the State filed an Information charging Arion with Count I, attempted residential entry, a Class D felony, I.C. §§ 35-43-2-1.5; -41-1-5. On August 30, 2011, the Stated filed a motion to amend the Information to allege that Arion was an habitual offender, I.C. § 35-50-2-8, which the trial court granted on September 19, 2011.

On January 10 and 11, 2012, a bifurcated jury trial was held. Arion's girlfriend testified that one pair of shoes found at Arion's residence were his. Arion's father testified that although he and Arion lived together, Arion had access to the items that the police seized from the garage. The State also elicited testimony from Dustin Inman (Inman), a fellow inmate while Arion awaited trial. Arion told Inman that he had found out that DeFord was an elderly woman who lived alone in a secluded house in the country. Arion had been informed that DeFord was an easy target, and that her house was easy to break into. Arion said that he had been to DeFord's a "few different times," moved things around, looked in windows, and stood on "different things." (Tr. Vol. I p. 92). He admitted to Inman that pictures from the trail cam were of him and that he had disguised his appearance by tying his hair back in some manner. Arion told Inman that the police had a picture showing his tattoo, but did not understand how his tattoo appeared despite wearing a long-sleeved shirt.

The State also produced testimony from a police officer on how the trail cam images could depict Arion's tattoo under his shirt. Police purchased a black, form-fitting

4

long-sleeved shirt similar to the one seized from Arion's residence and depicted in the trail cam photos. The police simulated dark conditions and used DeFord's trail cam to take pictures of a police officer who wore the long-sleeved shirt and had three tattoos on his back and arms. Shot from a similar distance from the trail cam, two of the police officer's tattoos were visible in the trail cam photos.

During trial, Arion submitted proposed preliminary and final jury instructions, including the following Preliminary Instruction No. 2:

> If the evidence in this case is susceptible of two constructions or interpretations, each of whom [sic] appears to you to be reasonable, and one of which points to the guilt of the accused and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the accused's innocence and reject that which points to his guilt.

(Appellant's App. p. 41). The trial court refused the instruction because it was already covered by its instructions, which were taken from the Indiana Pattern Jury Instructions. Arion also tendered a proposed final jury instruction requesting instruction on criminal trespass as a lesser included offense. The trial court refused to issue this instruction because the "evidence presented would [not] lead to a criminal trespass charge." (Tr. Vol. II p. 119).

The jury found Arion guilty as charged and adjudicated him to be an habitual offender. On February 23, 2012, the trial court sentenced Arion to three years' incarceration at the Department of Correction on Count I, enhanced by four and one-half years for the habitual offender adjudication.

Arion now appeals. Additional facts will be provided as necessary.

5

## DISCUSSION AND DECISION

### I. *Standard of Review*

Arion first contends the trial court abused its discretion by refusing his tendered instruction. Instructing the jury is a matter within the discretion of the trial court. *VanWanzeele v. State*, 910 N.E.2d 240, 246 (Ind. Ct. App. 2009), *trans. denied*. As such, we will reverse a trial court's decision regarding jury instructions only for an abuse of discretion. *Id.* A trial court erroneously refuses to give a tendered instruction, or part of a tendered instruction, if: (1) the instruction correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the tendered instruction is not covered by the other instructions given. *Overstreet v. State*, 783 N.E.2d 1140, 1164 (Ind. 2003), *cert. denied*, 540 U.S. 1150 (2004).

### II. *Presumption of Innocence*

Arion contends that the trial court committed reversible error by declining to give his Preliminary Instruction No. 2. He asserts that this instruction concerned the presumption of innocence and the duty of the jury to reconcile the evidence consistent with the defendant's innocence, correctly stated the law and was not covered by any of the instructions of the trial court. In *Robey v. State*, 454 N.E.2d 1221, 1222 (Ind. 1983), the supreme court held that where the defendant tenders a jury instruction that advises "the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so," failure to give the instruction is reversible error.

6

Recently, this court in *Lee v. State*, 964 N.E.2d 859, 865 (Ind. Ct. App. 2012), *trans. denied*, concluded that the trial court's rejection of an instruction virtually identical to that submitted by Arion constituted an abuse of discretion. Relying upon *Lee*, Arion argues that the trial court here committed reversible error by rejecting his instruction.

In *Lee*, the trial court rejected Lee's instruction and found adequate its instructions on 1) keeping an open mind and refraining from conclusions until the case was submitted for deliberation; and 2) the State's burden of proof to overcome the presumption of innocence. *Id*. at 863-64. On appeal, this court concluded that the trial court's "instructions did not adequately instruct the jury on the presumption of innocence." *Id*. at 865. Specifically, the court found that no "instruction was given to the jury adequately explaining the jury's duty to reconcile the evidence upon the theory of the defendant's innocence if they could do so." *Id*. However, the court noted that the State did not raise the issue of harmless error. *Id*. at 864. Here, the State has done so.

Arion's claim is therefore subject to the harmless error analysis. *See VanWanzeele*, 910 N.E.2d at 247. Before a defendant is entitled to reversal based on a perceived instructional error, he must affirmatively show that the error prejudiced his substantial rights. *See id*. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Lee*, 964 N.E.2d at 862-63.

Although no one witnessed Arion at DeFord's home on August 18 and 19, 2011, the State offered evidence from DeFord's trail cam. It is undisputed that these photos

7

captured a man on DeFord's back porch without her consent. Arion argues that the photographs are unclear. However, the photos clearly depict the man and illuminate a uniquely shaped tattoo on the man's bicep. Arion told police that the tattoo was one of a kind and photographs of Arion's tattoo were submitted into evidence. Police officers conducted an experiment demonstrating how a tattoo might be illuminated under similar conditions with infrared light, which the trail cam used.

Arion states that it was not obvious what the man was doing on DeFord's porch. Yet, one photograph depicts the man reaching for the back door. Arion protests that no door knob is visible in the photographs. A police officer testified to the location of both the back door to DeFord's home and the doorknob. He stated that the man's hands were reaching toward the same location. Finally, Inman testified that Arion told him that he was depicted in the trail cam photos, that DeFord's home "was an easy[,] easy target," and that he had been to DeFord's a "few different times." (Tr. Vol. I p. 92-3).

Taken together, the foregoing considerable evidence of guilt is such that even had the rejected instruction been read, the outcome of trial would not have changed. *See Dill v. State*, 741 N.E.2d 1230, 1234 (Ind. 2001). Thus, even assuming for the sake of argument that the trial court erred in refusing Arion's tendered instruction on the presumption of innocence, the error was harmless.

### III. *Criminal Trespass*

Arion argues that the trial court abused its discretion by refusing to instruct the jury on criminal trespass as a lesser included offense of residential entry. When called

upon by a party to instruct a jury on a lesser included offense of the crime charged, a trial court must perform a three-step analysis. *Higgins v. State*, 783 N.E.2d 1180, 1187 (Ind. Ct. App. 2003), *trans. denied*. First, it must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. *Id*. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. *Id*. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. *Id*. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id*. It is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense if there is such an evidentiary dispute. *Id*. However, if the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction. *Id*.

Criminal trespass is not an inherently lesser included offense of residential entry. *Id.* Thus, under the facts of this case, we consider whether criminal trespass was a factually included lesser offense. An offense is factually included if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. *Wright v. State*, 658 N.E.2d 563 (Ind. 1995). Examining the crimes of burglary and criminal trespass, the supreme court has held that alleging that a defendant "did knowingly or intentionally 'break and enter' the residence of another," sufficiently alleged facts constituting criminal trespass, thus making criminal trespass a factually included lesser offense of residential entry. *J.M. v. State*, 727 N.E.2d 703, 705 (Ind. 2000). Here, the State alleged that Arion did "knowingly or intentionally with the intent to commit the crime of residential entry, attempt to commit the crime of residential entry and did engage in conduct constituting a substantial step toward commission of the crime, to-wit, did travel to the residence of [DeFord] and attempt to enter that residence." (Appellant's App. p. 10). Because the Information alleged an attempt to commit residential entry, it follows that the State has alleged that the means used to commit the crime charged included all the elements of criminal trespass. *See Young v. State*, 846 N.E.2d 1060, 1062-63 (Ind. Ct. App. 2006). We therefore conclude that criminal trespass is a factually included offense of the charge of residential entry.

Turning to step three, we consider whether there is a serious evidentiary dispute regarding the distinction between residential entry and criminal trespass. A serious

10

evidentiary dispute exists where the jury can conclude that the lesser offense was committed and the greater offense was not. *Griffin v. State*, 963 N.E.2d 685, 691 (Ind. Ct. App. 2012). In this regard, Arion argues that there is a serious evidentiary dispute "as to whether the State proved an attempt to break and enter DeFord's house." (Appellant's Br. p. 22). The State, however, contends that no serious evidentiary dispute existed since "the evidence overwhelmingly established that [Arion] attempted to break and enter DeFord's home." (Appellee's Br. p. 19).

Here, Arion presented no testimony to contradict DeFord's testimony that she locked her doors, nor disputed that an offense had occurred. A police officer testified that a trail cam photo depicted Arion standing in front of DeFord's back door and putting his hand where the door knob was located. Although Arion relies on his closing argument that the picture "does not show that he has broken into or is going into the structure" or that "there is no door […] in the picture," we do not find that this creates a serious evidentiary dispute. (Tr. Vol. II p. 146). Rather, the bulk of record demonstrates that the dispute in this case focused on whether Arion's tattoos were similar that of the perpetrator. Without a serious evidentiary dispute on the element of breaking, the trial court did not abuse its discretion by refusing to give Arion's proposed criminal trespass instruction. *See VanWanzeele*, 910 N.E.2d at 245.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court's decision to decline Arion's proposed jury instruction on the presumption of innocence amounts to harmless

error and (2) the trial court did not abuse its discretion by declining to issue an instruction on criminal trespass.

Affirmed.

BARNES, J. concurs

BAKER, J. concurs in part and concurs in result in part with separate opinion

## IN THE
## COURT OF APPEALS OF INDIANA

RICKY EUGENE ARION,        )

       )

    Appellant-Defendant,    )

       )

       vs.       )    No. 08A04-1203-CR-115

       )

STATE OF INDIANA,        )

       )

    Appellee-Plaintiff.    )

**BAKER, Judge, concurring in part and concurring in result in part.**

I fully concur with the majority's determination that the trial court properly refused to give Arion's proposed jury instruction regarding his presumption of innocence. However, while I also agree that Arion was not entitled to an instruction on attempted criminal trespass, I do so for reasons other than those advanced by the majority.

I cannot agree with the majority's pronouncement that criminal trespass was a factually-included lesser offense of attempted residential entry in these circumstances. Slip op. at 10. In accordance with Indiana Code section 35-43-2-2(a)(5), an individual commits criminal trespass when he or she "knowingly or intentionally enters the dwelling of another person without the person's consent." (Emphasis added). Such was not the case here because, as the majority notes, Arion was charged with and convicted of attempted residential entry. Slip op. at 4-5 (emphasis added). And the evidence did not establish that Arion actually entered DeFord's residence. Therefore, it cannot be said that the offense of trespass is a factually-included lesser offense under Indiana Code section 35-43-2-2(a)(5). See J.M. v. State, 727 N.E.2d 703, 705 (Ind. 2000) (observing that a charge that the defendant did knowingly or intentionally "break and enter" the residence of another person sufficiently alleged facts constituting criminal trespass).

I would also note that Indiana Code section 35-43-2-2(a)(1) cannot be relied upon as support for giving Arion's proposed instruction because the crime of trespass under this subsection is committed when a person "knowingly or intentionally enters the real property of another person after having been denied entry by the other person. . . ." Here, there is no evidence that DeFord had previously denied Arion entry to her real property. Thus, the trial court also properly denied Arion's proposed instruction on this basis.

For these reasons, I believe that the trial court properly exercised its discretion in refusing to give Arion's proffered instruction on criminal trespass.

14