**Timothy W. YOUNG, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 33A01–0508–CR–402.**

Court of Appeals of Indiana.

May 9, 2006.

John Pinnow, Greenwood, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Timothy W. Young appeals his conviction for residential entry,[1] a Class D Felony. He raises one issue, which we restate as whether the trial court abused its discretion when it failed to instruct the jury on Class A Misdemeanor criminal trespass[2] as a lesser included offense of residential entry.[3]

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On November 17, 2004, Newcastle Police Officer Matt Patterson was dispatched to the Vine Street Apartments. While there, he noticed Young, who darted into apartment fifteen after spotting Officer Patterson. Young was staying in apartment fifteen and, in lieu of paying rent, made repairs on other apartments. In this capacity, Young also had keys to apartments nine and three. After confirming with dispatch that the department had an active warrant for Young's arrest, Officer Patterson waited for back-up outside the door to apartment fifteen. When Sergeant Brad Flynn arrived, and the two officers announced their presence, the only response was the sound of moving furniture as Young placed a refrigerator against the door.

Thereafter, fifteen to twenty additional officers arrived on the scene and forcibly entered Young's apartment. Upon entering, the officers could not find Young, but discovered an opening in a closet ceiling that led to the apartment's attic. When officers searched the attic they found another opening leading down to a different apartment closet. They also found signs that the cover on a third opening had been disturbed. During the attic search, officers were posted to watch the other apartments. Detective Brad Catron was inside apartment three when he saw a pair of legs dangling from a closet ceiling. He grabbed the legs but could not hold on, allowing the unidentified person to escape back into the attic.

As the officers searched the apartments, they eventually discovered Young in apartment eleven. Larry Dellinger, who rented apartment eleven, was not home at the time and had not given Young permission to enter his apartment. When the officers entered Dellinger's apartment, they also discovered that the attic access in his closet ceiling was open.

---

1. *See* IC 35–43–2–1.5.

2. *See* IC 35–43–2–2(a)(5).

3. Young also contends that the trial court improperly denied his motion for mistrial. Based on our holding, we need not address this issue. Young and the State also agree that the trial court erroneously imposed a separate sentence on Young for being a habitual offender. The State agrees that, on remand, the trial court shall only impose the habitual offender finding, under IC 35–50–2–8, as an enhancement of any sentence imposed for residential entry.

The State charged Young with residential entry, a Class D felony, and resisting law enforcement, a Class A misdemeanor.[4] The State later amended the charges to include a habitual offender count. After Young filed a motion to add a lesser included offense of Class A misdemeanor criminal trespass, the State filed an objection to this motion. Shortly before trial, Young filed a request for jury instructions concerning criminal trespass as a lesser included offense to residential entry. At trial, the court denied this request. *Tr.* at 434. The jury found Young guilty as charged, and he now appeals.

## DISCUSSION AND DECISION

██ Young contends that the trial court abused its discretion when it failed to instruct the jury on criminal trespass as a lesser included offense of residential entry. Our Supreme Court has found that:

> When asked to instruct the jury on a lesser included offense, trial courts are to apply the three part test set out in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). Parts one and two require the trial court to determine whether the lesser included offense is either factually or inherently part of the greater offense. If so, *Wright* requires the trial court to determine if there is a "serious evidentiary dispute" as to any element that distinguishes the greater offense from the lesser. This is shorthand for *Wright's* full holding that "if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense."

*Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998) (citation omitted). Where the trial court makes a determination concerning a serious evidentiary dispute, we review the court's rejection of a tendered instruction for an abuse of discretion. *Champlain v. State*, 681 N.E.2d 696, 700 (Ind.1997).

██ Here, Young contends that the trial court improperly refused to instruct the jury on the elements of criminal trespass, as a factually included lesser offense of residential entry. An offense is factually included if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. *Higgins v. State*, 783 N.E.2d 1180, 1188 (Ind.Ct.App. 2003). At the time of Young's arrest, IC 35–43–2–1.5 listed the elements of residential entry as (1) a person who (2) knowingly or intentionally (3) breaks and enters (4) the dwelling (5) of another person. Young's requested instruction tracked the language of IC 35–43–2–2(a)(5), which lists the elements of criminal trespass as (1) a person who (2) not having a contractual interest in the property (3) knowingly or intentionally (4) enters (5) the dwelling (6) of another person (7) without the person's consent.

██ The State contends that criminal trespass is not a factually included lesser offense of residential entry. The State argues that by failing to refer to contractual interest or lack of consent, the charging instrument failed to allege that the means used to commit the offense included all the elements of criminal trespass. Although the residential entry charge does not explicitly allege that Young entered Dellinger's apartment without a contractual interest in the property or Dellinger's consent, the charge does allege that Young "did knowingly break and enter the dwelling of another." *Appellant's App.* at 27. Our Supreme Court found, in *J.M. v. State*, 727

---

4. *See* IC 35–44–3–3(a)(3). Young is not appealing this charge.

N.E.2d 703, 705 (Ind.2000), that by using this charging language, the State sufficiently alleged facts constituting criminal trespass. *Id.* Thus, just as we did in *Higgins,* we find that criminal trespass is a factually included lesser offense of residential entry.

█ We now must address whether a serious evidentiary dispute about the elements of residential entry distinguishes residential entry from criminal trespass such that a jury could conclude that Young committed criminal trespass but did not commit residential entry. We conclude that a serious evidentiary dispute does exist over whether Young broke and entered Dellinger's apartment or merely entered it.

█ In order to establish that a breaking has occurred, the State need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry. *McKinney v. State,* 653 N.E.2d 115, 117 (Ind.Ct.App.1995). The opening of an unlocked door is sufficient. *Id.* The State contends that even if criminal trespass is a factually included lesser offense of residential entry, the trial court correctly found no serious evidentiary dispute. The State argues that the only inference that the jury might reasonably have drawn from evidence presented at the trial was that the attic access in Dellinger's closet ceiling must have been closed until Young entered this apartment.

In particular, the State refers us to our holding in *Higgins,* where the victim's testimony removed any serious evidentiary dispute concerning whether the defendant broke and entered the victim's home. *Higgins,* 783 N.E.2d at 1189. However, *Higgins* is distinguishable. There, the homeowner "testified unequivocally that the door was closed." *Id.* Here, Dellinger provided the only evidence about the opening in the closet. His testimony was inconclusive on whether the attic access in his closet ceiling was open or closed prior to Young's entry.

Dellinger testified on direct examination as follows:

Q. Okay. Is there an entry to the attic in your apartment?

A. Yeah.

Q. And where is that at?

A. In the closet.

Q. Okay. And is that ever covered?

A. As far as I know it wasn't. I never really knowd [sic] there was one in there until, cause I never paid attention if there was one in there when I moved in and everything. I never looked and see if there was one in there.

Q. So you always, you just thought it was covered?

A. Yeah I thought it was.

Q. When did you realize that that could get up into the attic?

A. That day that happened.

*Tr.* at 151–52. On cross examination, Dellinger testified as follows:

Q. Okay. And uh, you had testified when the Prosecutor had asked you, that you even knew that your attic had a cover on it or not. And you were unable to say . . .

A. I've never, as far as I know, it didn't have one. I never even looked up there to see if it had one in it when I moved in or not. Cause I never paid no attention.

Q. Okay. You didn't pay any attention?

A. No.

*Id.* at 162. On redirect examination, Dellinger testified:

Q. You would have had to spend some time in your closet prior to November 17th. It's full of clothes?

A. Yeah.

Q. An opening in your ceiling, wouldn't that have caught your attention?

. . . .

A. I probably have but I just, I guess I didn't. I'm sorry.

. . . .

Q. Okay. I need to re-ask my question, okay. Would a hole in your ceiling have caught your attention?

A. It probably had but I just probably didn't pay no attention. I just seen, I didn't really pay that much attention if it was up there or not. It might have been up there and I looked at it and just glanced at it and went on and never paid no attention.

Q. So if it was covered, it wouldn't even have . . .

A. It was covered at first. I know it probably was covered. I didn't see no hole up there. I probably seen a thing up there and I didn't, you know, didn't know what it was. What it was for anyhow.

Q. Was that a big hole?

A. It looked like to me it was just for a small person to crawl in. But if it was there, it was covered and I didn't pay that much attention to it.

*Id.* at 164–66.

Here, a serious evidentiary dispute existed. After listening to Dellinger's testimony, a reasonable jury could have found that the attic access in his closet ceiling was either open or closed prior to Young's entry into Dellinger's apartment. *Wright* requires reversal if the trial court wrongly concludes that no serious evidentiary dispute exists and refuses to give an instruction on a lesser included offense. *Cham-*

*plain,* 681 N.E.2d at 700. Accordingly, the trial court should have allowed Young's jury instruction to include criminal trespass as a lesser included offense of residential entry.

We reverse and remand for retrial consistent with this holding.

SULLIVAN, J., and DARDEN, J., concur.