Lawrence GOLLADAY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 08A02–0701–CR–93.

Court of Appeals of Indiana.

Oct. 25, 2007.

Kurtis G. Fouts, Delphi, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Lawrence Golladay appeals his conviction of Home Improvement Fraud,[1] a class A misdemeanor. The following restated issue is dispositive of the appeal: Did conviction under I.C. § 35–43–6–12(a)(4) (Subsection (a)(4)) violate due process when the defendant was charged under I.C. § 35–43–6–12(a)(3) (Subsection (a)(3))?

We reverse.

---

1. Ind.Code Ann. § 35–43–6–12 (West, PREMISE through 2007 Public Laws, approved and effective through April 8, 2007).

The facts favorable to the conviction are that on August 2, 2004, Golladay and Max Starkey signed a contract calling for Golladay to (1) replace the roofs on the house and barn owned by Starkey and his wife, Elaine, (2) replace the siding on the house, and (3) move an electrical box from outside to inside the house. The contract called for the Starkeys to pay $10,000 to Golladay at the time the contract was signed, and an additional $6,000 upon completion of the work, for a total of $16,000. Starkey began work the next day, August 3.

At some point, weeks after Golladay commenced the job, Starkey informed Golladay that his insurer was advising him to file a lawsuit against Golladay because Golladay was not progressing quickly enough in completing the job. On August 18, 2004, the Starkeys paid Golladay another $4,000. Golladay eventually walked off the job because, he claimed, Starkey threatened several times to file a lawsuit against him. At the time he walked off, approximately six weeks after commencing work on the project, Golladay had (1) purchased all of the necessary roofing materials and had them delivered to the Starkeys' property, (2) rented a dumpster and had it delivered to the Starkeys' property, and (3) completed removal of the old shingles and wood decking from the house. The Starkeys sued Golladay after he walked off the job. Golladay failed to respond to the lawsuit and default judgment was entered against him.

On April 29, 2005, Golladay was charged by information with home improvement fraud as a class C felony under Subsection (a)(3). The elements elevating the offense to a class C felony were that the contract amount exceeded $1000 and the other party to the contract—Mr. Starkey—was at least sixty years old. At trial, Golladay claimed he walked off of the job because Starkey continually threatened to sue him.

Also, Golladay claimed that although the contract called for him to install siding on the house, he and Starkey had orally agreed that Golladay would merely paint the house instead. According to Golladay, Starkey told him the insurer wanted and paid for new siding, but Starkey had already spent a portion of the settlement proceeds on vehicle repair and asked Golladay to state in the contract that he would install siding. Starkey denied Golladay's claims in that regard.

Following the presentation of evidence at the bench trial, the trial court found that the State had proven home improvement fraud on the following basis:

I frankly am going to find the Defendant did not have the intent, but that doesn't mean that he's not guilty because there's another statute here. He admitted guilt himself what he testified to. [Sic.] It's another version of this. And he entered into paragraph 4: uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract. If he and the guy conspired or he and the guy didn't conspire, I'm talking about Mr. Starkey, to put down that they were going to side and they were just going to paint, either he did that knowing that Starkey wanted it sided or he did that knowing that Starkey expected it to be painted. He none the less [sic] entered into that, so that the homeowner, Mr. Starkey, would enter into that. And it's clear to me that that was an intentional act that he testified to that there was never an intention that it be sided, so I wasn't going to do that. [Sic.] But it's in the contract. If the Court didn't have anybody in here, I would have expected whatever to be done what is said in the contract. [Sic.] And so I am going to find in this case that the Defendant, Lawrence W. Golladay, is guilty of home

improvement fraud under Indiana Code 35–43–6–12(4)—(a)(4), and I'm going to find under 43–6–13, enhanced offenses under 13(a)(1) that the home improvement contract price is one thousand dollars or more.

*Appellant's Appendix* at 172–73. The reference to "another statute" at the beginning of the foregoing comments clearly refers to the fact that Golladay was charged under Subsection (a)(3), but that the court instead found him guilty of the crime defined in Subsection (a)(4). The court did not, however, enter judgment as a class C felony because it concluded the State had failed to establish that the victim was at least sixty years old. The court explained:

> I don't think the State's has proven the sixty years old. I think the property belonged to both parties. One of them wasn't sixty. You know whatever that's worth. I don't think that's proven beyond a reasonable doubt. He is the only one that signed the contract. I'm talking about the husband of the husband and wife heir. [Sic.] She didn't sign he contract. Even though it has her name at the top, he's the only one that signed it. The benefit went to the property and the owners of the property, so I don't think that proven.

*Id.* at 171–72.[2]

Golladay challenges the conviction on several bases, two of which warrant reversal. Although we reverse the conviction on due process grounds, we will briefly discuss the other basis for reversal because we find no other cases explaining the elements of Subsection (a)(4), and wish to provide clarification on that subject. In presenting this issue, Golladay frames the question in terms of sufficiency of the evidence. The real issue, however, in view of the trial court's comments when announcing its decision, concerns the nature of the elements of the offense set out in Subsection (a)(4).

Subsection (a)(4) provides: "A home improvement supplier who enters into a home improvement contract and knowingly ... uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract ... commits home improvement fraud[.]" The trial court's comments reflect its view that a person could be found guilty of this offense merely by entering into a contract to perform work that he or she never intended to perform. In fact, that is precisely what the court found here. The court explained that Golladay's admission that he indicated in the contract he would install new siding, but he never intended to do so, constituted a violation of Subsection (a)(4), *regardless of whether Starkey was aware that the siding would not be installed.* The trial court evidently reasoned that, even assuming Starkey asked Golladay to insert that term into the contract and knew it would not be honored, the elements in the statute would be proven because Starkey would sign the contract only if that ultimately

---

**2.** Although the State does not challenge that aspect of the court's judgment, it claims that the ruling with respect to this element was erroneous. According to the State:

> Under Indiana Code Section 35–43–6–13(c)(1)(B), the State needed to show that the "consumer is at least sixty (60) years of age." The evidence established that Max Starkey was age sixty-three (63) at the time of contracting and that he was the consum-

er who signed the contract with Defendant. Based on this evidence, entered without objection, the State did prove beyond a reasonable doubt this element of the charged crime.

*Appellee's Brief* at 10–11 n. 3 (citation to record omitted). The State's interpretation of this element of the offense as applied to the facts of this case is correct.

false term was inserted. Thus, Starkey was caused to enter the contract by a false promise. Although we understand the trial court's reasoning, we conclude such an interpretation of the statute misperceives the nature of the conduct the statute was intended to prohibit.

■■■ When construing a statute, we strive to determine and effect the legislature's intent. *Tormoehlen v. State,* 848 N.E.2d 326 (Ind.Ct.App.2006), *trans. denied.* "A fundamental principle of construction is to construe the statute in accordance with the purpose of the statute and the statutory scheme of which it is a part." *Id.* at 330. We presume that the legislature intends courts to apply language in a logical manner that is consistent with the statute's underlying policy and goals. *Tormoehlen v. State,* 848 N.E.2d 326. Legislative intent will be gleaned by considering the statute as a whole and that interpretation will prevail over the strict, literal meaning of any word or term used therein. *Id.* Lastly, "penal statutes must be construed strictly against the State and may not be enlarged beyond the fair meaning of the language used to include offenses other than those clearly defined." *Tucker v. State,* 646 N.E.2d 972, 975 (Ind.Ct.App.1995).

As we see it, the issue here concerns the meaning of the phrase, "uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract". I.C. § 35–43–6–12(a)(4). The trial court interpreted this to mean that the statute is violated whenever a contractor knowingly makes a false promise in a contract, and the homeowner enters the contract in part because of that false promise. That is indeed correct—as far as it goes. A question posed in the instant case is, must the homeowner be deceived by the false promise? The trial court answered that question in the negative. According to the trial court's interpretation, it is enough that a false promise was made in the contract and the homeowner was induced to sign the contract in part because of that false promise, *even if the homeowner knew the promise was false.* Golladay contends the homeowner must have been deceived by the false promise. We agree.

■■■ We have concluded that the legislature's goal in enacting I.C. § 35–43–6–12 "was to protect people, and particularly people at least sixty years of age, from being taken advantage of by persons performing or offering to perform work on the home." *Tucker v. State,* 646 N.E.2d at 975. The "people" referred to in the above excerpt are, of course, homeowners who enter into home improvement contracts. Put simply, then, the goal of the statute is to protect homeowners. The trial court's interpretation does not necessarily achieve that purpose. As applied in this case, assuming a certain set of facts, it penalizes insurance fraud and protects only the homeowner's insurance company. That is not the goal of I.C. § 35–43–6–12. Therefore, consistent with the statute's purpose, and considering the language of Subsection (a)(4), the references to "deception" and "false" pretenses and promises are to be viewed from the perspective of the homeowner. The homeowner must be deceived by the false pretenses and promises, i.e., must believe that they are genuine and that the contractor intends to perform as promised. The final element is, of course, that the false promise must have, at least in part, induced the homeowner to enter into a home improvement contract.

In the instant case, there is no question that Golladay made a false promise, i.e., that he would install new siding, or that Starkey signed the contract based in part upon that contract provision. There was evidence that Starkey believed the prom-

ise, as Starkey testified he believed Golladay was going to install new siding and wanted Golladay to do so. There was also evidence to the contrary, however, consisting of Golladay's claim that he and Starkey agreed that the contract would call for new siding, but that Golladay would paint the house instead. We do not know which of these claims the trial court found more credible because, based upon its interpretation of Subsection (a)(4), the trial court believed Golladay violated the statute either way. Thus, the trial court expressly stated that it made no finding on that question. We clarify here that Starkey's belief in the promise was an element of the offense, and therefore the conviction could not stand without a finding to that effect. Accordingly, based upon the trial court's misinterpretation of the elements of the offense defined in Subsection (a)(4), the conviction could not stand.

■ As we have indicated, however, there is another fatal flaw in this conviction. Golladay claims his conviction under Subsection (a)(4) violates due process because he was "convicted of an uncharged count of Home Improvement Fraud, a Class A misdemeanor, under I.C. § 35–43–6–12(a)(4), which is not a lesser included offense of the single count filed in this case of Home Improvement Fraud, a Class C Felony, under I.C. § 35–43–6–12(a)(3)." Essentially, Golladay's due process argument is that he was not placed upon fair notice that he would have to defend against the crime of which he was ultimately convicted. This argument, i.e., whether an offense is an included offense of the crime charged, typically arises in the context of allegations of jury instruction error. Thus, our analysis will draw primarily from cases discussing jury instructions involving lesser-included offenses.

■ Generally, when deciding whether an offense is an included offense of the crime charged, our courts have employed the three-step test outlined in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). Under that test, we must first determine if the alleged included offense is inherently included in the charged offense. *Id.* If not, we must decide whether the alleged included offense is factually included in the crime charged. *Id.* Finally, if the alleged included offense is either inherently or factually included, the trial court must look at the evidence of the case to see if there is a serious evidentiary dispute about the elements distinguishing one from the other. *Id.*

According to Ind.Code Ann. § 35–41–1–16 (West, PREMISE through 2007 Public Laws, approved and effective through April 8, 2007), an "included offense" is one that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

In the instant case, the provisions in question state:

a) A home improvement supplier who enters into a home improvement contract and knowingly:

\*    \*    \*    \*    \*    \*

(3) promises performance that the home improvement supplier does not intend to perform or knows will not be performed;

(4) uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract;

\*　　\*　　\*　　\*　　\*　　\*

commits home improvement fraud[.]

Subsections (a)(3) and (a)(4) clearly define similar conduct. Both require the existence of a home improvement contract, and both require some sort of deception on the part of the defendant with respect to that contract. The only difference between the two is that Subsection (a)(4) requires that the defendant use such deception to induce the consumer to enter into the contract. As such, Subsection (a)(4) contains an element that is not contained in Subsection (a)(3). Thus, it is not an inherently included offense of Subsection (a)(3).

We must now decide whether Subsection (a)(4) is factually included in the crime charged. "An offense is factually included if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Young v. State*, 846 N.E.2d 1060, 1062 (Ind.Ct.App.2006). In the instant case, the relevant portion of the charging information alleges:

> Lawrence W. Golladay, a home improvement supplier, did enter into a home improvement contract with Max Starkey and did knowingly promise performance, to-wit: to roof the home and barn and side the house; that the defendant did not intend to perform or knows will not be performed, said contract being in excess of $10,000.00 and Max Starkey being over the age of sixty (60) years.

*Appellant's Appendix* at 62. Examining this language, it is apparent that the allegations concerning the means used to commit the crime charged (i.e., Subsection (a)(3)) do *not* include all of the elements of Subsection (a)(4); the element of fraudulent inducement to enter into the contract is missing. An offense is not factually included within the charging instrument if critical elements of the crime convicted are excluded from the charging instrument. *Chinda v. State*, 754 N.E.2d 981 (Ind.Ct. App.2001), *trans. denied.* Thus, Golladay could not be convicted under Subsection (a)(4) because it included an element that was neither a part of Subsection (a)(3) (the crime charged) nor factually included in the charging instrument. *See cf. id.* at 984 ("[a] defendant may not be convicted of a lesser charge when he was only charged with the greater crime and did not receive fair notice of the charges against him"). Therefore, the conviction under Subsection (a)(4) violated due process and must be reversed. We therefore remand with instructions to enter a judgment of acquittal as to that conviction.

Judgment reversed.

BAKER, C.J., and CRONE, J., concur.

