**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 04 2014, 9:52 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL J. KYLE**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RANDY L. MADEWELL,                          )
                                            )
    Appellant-Defendant,                   )
                                            )
        vs.                               )     No. 41A05-1305-CR-254
                                            )
STATE OF INDIANA,                           )
                                            )
    Appellee-Plaintiff.                    )

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1201-FD-11

**March 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

After hailstorms hit central Indiana in May 2011, Randy L. Madewell moved from Texas to Indiana and started Brown County Roofing out of a friend's home, claiming to be "locally owned and operated." Although Madewell secured contracts and money from six homeowners, he never replaced their roofs as promised or returned their money. A jury found him guilty of six counts of home-improvement fraud—three as Class D felonies and three as Class B misdemeanors. The trial court imposed consecutive sentences on the Class D felonies totaling six years.

Madewell contends that the evidence is insufficient to prove that when he entered into the contracts with the homeowners, he did not intend to replace their roofs or knew that he would not replace their roofs. He also contends that the trial court erred in imposing consecutive sentences on the Class D felonies because his crimes arose out of an episode of criminal conduct. We find the evidence sufficient to prove that Madewell came to Indiana to make a fast profit and that he did not intend to replace or knew that he would not replace the homeowners' roofs when he entered into the contracts. We also find that the crimes did not arise out of an episode of criminal conduct because they involved different homeowners on different dates. We therefore affirm the trial court.

**Facts and Procedural History**

Indiana had several hailstorms in May 2011. Madewell, a contractor by trade, lived in Texas, but he knew Johnny Mullens, who lived in Brown County, Indiana. Madewell contacted Mullens and proposed that they "do the roofing thing." Tr. p. 12. Mullens told

2

Madewell that he would do whatever he could to help, but he was not going to quit his full-time job as a gas hauler for Circle K.

During the first week in June 2011, Madewell arrived at Mullens' house and moved in with his family. Madewell brought his truck as well as some office and roofing equipment. He did not bring a roofing crew with him. Madewell maintained his Texas driver's license, registration, and citizenship.

Within a month, Madewell created Brown County Roofing. Initially, the company was set up as a sole proprietorship. Madewell used Mullens' residential address and personal cell phone on his advertising materials. *Id.* at 15. He also stated in the materials that it was "locally owned and operated." *Id.*

Madewell hired Mullens as a salesperson to sign up as many homeowners as he could to use Brown County Roofing to replace their hail-damaged roofs. Mullens worked part-time for Madewell from June until the end of August 2011. During this time, Mullens signed up approximately eight to ten homeowners. *Id.* at 27-28. However, during this same time, the company replaced only three roofs, even though it takes only about two days to replace a roof. *Id.* at 18-19. Mullens occasionally asked Madewell why he had not lined up subcontractors to start working on the roofs since he had already secured signed contracts and money from the homeowners. *Id.* at 20-21. Madewell, however, always gave Mullens different excuses. *Id.* When the business relationship between the two men soured, Madewell moved out of Mullens' house in August 2011.

Also in August 2011, Madewell obtained business insurance, organized Brown County Roofing as a Limited Liability Company (LLC), and obtained an Employer Identification Number.

The six homeowners at issue in this case signed contracts with Madewell but never had their roofs replaced or their money refunded.

On June 30, 2011, Madewell and Mullens went to the home of Diana Boylls, who was sixty-six years old at the time of trial in 2013. Madewell told Boylls about possible hail damage and instructed her to contact her insurance company. Boylls signed a contract with Brown County Roofing that day. State's Ex. 6. The following week, an insurance adjuster, Madewell, and Mullens inspected Boylls' roof. On July 11, Boylls wrote Madewell—not Brown County Roofing—a check for $4000 from her personal funds because she had not received any insurance proceeds. After receiving her insurance proceeds, on July 19, Boylls again wrote Madewell—not Brown County Roofing—a second check for $1907. Madewell never returned to Boylls' home. Boylls eventually had her roof replaced in the summer of 2012 by another contractor.

Madewell inspected Mary Ruhana's roof on July 11, 2011. Ruhana's husband signed a contract that same day. State's Ex. 9. The following day, Mullens and an adjuster from State Farm inspected Ruhana's roof. Ruhana wrote Brown County Roofing a check for $7608.01 on August 4. Madewell met with the State Farm adjuster at Ruhana's house again in October. Supplies were never delivered to Ruhana's house, and no work was completed. Ruhana eventually had her roof replaced in November 2011 by another contractor.

4

Madewell met with sixty-one-year-old Mike Rogina in July 2011 about his roof damage, and his wife signed a contract on July 11. State's Ex. 14. Rogina wrote a check to Brown County Roofing for $7535.56 on July 29. Madewell never performed any work for Rogina, and in October 2011, Rogina contacted the police.

Kevin Dunlap received a Brown County Roofing flyer in his mailbox and called them. On July 22, 2011, Mullens went to Dunlap's home to assess his hail damage. Dunlap's wife signed a contract that day. State's Ex. 3. When Dunlap's insurance company approved the work, Madewell went to Dunlap's home around August 30. Dunlap made a down payment of $5328. Madewell told Dunlap that he would start work in about three weeks, but he never did. Dunlap contacted the police in November 2011. Dunlap had his roof replaced by another contractor in early 2013.

Pauline Beuke's roof was also damaged by hail. Beuke was seventy-nine-years old at the time of trial in 2013. Like Dunlap, Beuke called Brown County Roofing after receiving a flyer. On July 22, 2011, Mullens inspected her roof. Beuke signed a contract that day. State's Ex. 20. An insurance adjuster came over later to confirm the damage. On September 20, Beuke met with Madewell and wrote Brown County Roofing a check for $7000. Madewell never performed any work for Beuke, and another contractor replaced Beuke's roof in December 2011.

Finally, Mullens went to the home of John Boyce on August 2, 2011, and inspected his roof. Boyce signed a contract that day. State's Ex. 11. Madewell later met Boyce's insurance adjuster at the house. Boyce wrote a check to Brown County Roofing for

$4487.59 on August 10. Madewell never performed any work for Boyce. Boyce had his roof replaced by another contractor in October or November 2011.

When Boylls wrote her first check to Madewell on July 11, 2011, Madewell had not yet opened a bank account for his company. So, he went to Boylls' bank and cashed her $4000 check. Between July 11 and September 26, 2011, Madewell collected and deposited nearly $110,000 through Brown County Roofing. From that amount, Madewell purchased materials for a few projects, but none for any of the six homeowners in this case. Madewell maintained multiple Brown County Roofing bank accounts, including a checking account as a sole proprietorship (the "dba account"), which was established on July 19, 2011; a checking account after Madewell organized his company as an LLC (the "LLC account"), which was established on August 13; and personal accounts with his bank that were separate and distinct from his Brown County Roofing business accounts. The dba account for August 2011 shows a $673.46 purchase at Bass Pro Shop for fishing poles. Madewell also used the account that month to make purchases at Ralph Lauren (twice), Elder Beerman, Columbia, Jockey, and several leather stores for motorcycle accessories.

Madewell made similar purchases using the dba account in September 2011 at Ralph Lauren, Columbia, Macy's, Moonshine Leather, Motorcycle Center (twice), and Target. He also bought a boat, an iPod for his son, and a television for his camper. Madewell also spent $3064 on a motorcycle for his son that he claimed was to pay back a loan that was used to start up the company.

In October 2011, after Madewell had returned to Texas, the LLC account balance was over $9000. But by the end of the month, the balance had decreased to $500.

6

Madewell made 104 purchases in Texas, and none of them were related to repairing roofs in Indiana.

In January 2012, the State charged Madewell with six counts of home-improvement fraud. Three of the counts were charged as Class D felonies because the consumers were at least sixty years old (Count 1: Rogina, Count 3: Boylls, and Count 5: Beuke), and the other three counts were charged as Class B misdemeanors (Count 2: Boyce, Count 4: Ruhana, and Count 6: Dunlap). Appellant's App. p. 14-19. A three-day jury trial was held, and Madewell was found guilty of all six counts. The trial court sentenced Madewell to 730 days (2 years) for each of the Class D felonies (Counts 1, 3, and 5) and 180 days for each of the Class B misdemeanors (Counts 2, 4, and 6). The court ordered Counts 1, 3, and 5 to run consecutive to each other and Counts 2, 4, and 6 to run concurrent to each other and to the other counts, for an aggregate sentence of 2190 days (6 years). The court also ordered Madewell to pay restitution to each of the homeowners.

Madewell now appeals.

**Discussion and Decision**

Madewell contends that the evidence is insufficient to support his convictions and that the trial court erred in ordering his sentences for the Class D felonies (Counts 1, 3, and 5) to be served consecutively.

**I. Sufficiency of the Evidence**

Madewell contends that the evidence is insufficient to support his six convictions for home-improvement fraud. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979

7

N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

In order to convict Madewell of Class B misdemeanor home-improvement fraud, the State had to prove that Madewell entered into a home-improvement contract and knowingly promised performance, that is, a new roof, that he did not intend to perform or knew would not be performed. Ind. Code § 35-43-6-12(a)(3); Appellant's App. p. 15, 17, 19. To establish that it was a Class D felony, the State had to prove that the consumers were at least sixty years old and the home-improvement contract price was $10,000 or less. Ind. Code § 35-43-6-13(b)(2); Appellant's App. p. 14, 16, and 18. The legislature's goal in enacting Section 35-43-6-12 was to protect people, and particularly people at least sixty years of age, from being taken advantage of by people performing or offering to perform work on their homes. *Golladay v. State*, 875 N.E.2d 389, 393 (Ind. Ct. App. 2007), *clarified by* 880 N.E.2d 336 (Ind. Ct. App. 2008).

Madewell's only argument on appeal is that "the State presented no evidence of Madewell's intent during the period of July through September when he actually entered into the contracts." Appellant's Br. p. 7. Knowledge and intent are mental states of the actor; therefore, the trier of fact must resort to reasonable inferences based on an examination of the surrounding circumstances to reasonably infer their existence. *Slone v. State*, 912 N.E.2d 875, 880 (Ind. Ct. App. 2009), *trans. denied*.

8

We find that the evidence is sufficient to prove that when Madewell entered into the home-improvement contracts with each of the six homeowners, Madewell either did not intend to replace their roofs or knew that he would not replace their roofs. Madewell moved from Texas to Indiana and created Brown County Roofing. Madewell advertised as a "locally owned and operated" business but used Mullens' address and phone number. Madewell, however, maintained his Texas driver's license, registration, and citizenship. He asked that the first payment from Boylls be made out to him—not Brown County Roofing—and cashed the check before opening a business account. At trial, Madewell was unable to account for how that first money was used.

Madewell asked Mullens to line up as many homeowners as he could, but without any intention of finding subcontractors to perform the actual work. Despite contracting with at least nine homeowners, only three roofs were installed between June and September 2011. Curiously, one of the roofs Madewell completed, and in a timely manner, was for an investigator for the Indiana Secretary of State's office. Tr. p. 333, 348. Madewell received over $100,000 between June and September 2011, but from that amount he paid for only a few roofs to be installed. By the end of October, nearly all of the money was gone. Madewell spent a substantial amount of money on clothes, leather accessories, fishing equipment, a boat, a motorcycle and accessories, a television, an iPod, and other personal items.

From this evidence, the jury could have reasonably inferred that Madewell came to Indiana to make a fast profit after the May 2011 hailstorms and took advantage of Mullens and his hospitality by setting up shop in his home and using his address in order to proclaim

9

that his business was "locally owned and operated." Although Madewell collected

$100,000 between June and September 2011, he completed only three roofs and spent no

money toward the roofs of the six homeowner victims here. Instead, he spent money on

personal items. The evidence is sufficient to prove that when Madewell entered into the

home-improvement contracts with each of the six homeowners, Madewell either did not

intend to replace their roofs or knew that he would not replace their roofs.[1] Madewell's

arguments that in August 2011 he obtained business insurance, organized Brown County

Roofing as an LLC, and obtained an Employer Identification Number—notably all of

which occurred approximately two months *after* he started his company—are merely

requests for us to reweigh the evidence, which we will not do. We therefore affirm

Madewell's six convictions for home-improvement fraud.

## II. Consecutive Sentence

Madewell contends that the trial court erred in ordering consecutive sentences for

his Class D felonies (Counts 1, 3, and 5) totaling six years. Specifically, he argues that the

trial court's imposition of consecutive sentences violates Indiana Code section 35-50-1-

2(c), which provides in relevant part:

> [E]xcept for crimes of violence, the total of the consecutive terms of
> imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and
> IC 35-50-2-10, to which the defendant is sentenced for felony convictions
> arising out of an episode of criminal conduct shall not exceed the advisory

---

[1] Madewell notes that the dates included in the charging informations range from October 9 to November 14, 2011, which is after Madewell left Indiana. *See* Appellant's App. p. 14-19 (charging informations). However, Madewell does not frame this issue as a fatal variance. Moreover, the law is well settled that where time is not an element or "of the essence of the offense," the State need not prove the precise date alleged in the charging information but may prove that the crime occurred at any time within the statutory period of limitations. *Sangsland v. State*, 715 N.E.2d 875, 878 (Ind. Ct. App. 1999), *trans. denied*. Here, because time is not an element or "of the essence" of home-improvement fraud, the State was not limited to proving that the offenses occurred between October 9 and November 14.

10

sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Madewell asserts that his crimes were part of a single episode of criminal conduct, and, as a result, the trial court erred in imposing consecutive sentences exceeding four years, which is the advisory sentence for a Class C felony.

An "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). In determining whether offenses are sufficiently related, emphasis has been placed on the timing of the offenses and whether they were committed simultaneously or contemporaneously. *Gootee v. State*, 942 N.E.2d 111, 114 (Ind. Ct. App. 2011), *trans. denied.* Additionally, we may consider "whether the conduct is so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to details of the other charge," though this consideration is not dispositive. *Id.*; *see also Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006).

Madewell entered into home-improvement contracts with six different homeowners—three of them at least sixty years old—for different amounts of money on multiple dates. Although his crimes were similar—entering into contracts to replace the homeowners' roofs, taking their money before performing any work, and then not replacing their roofs or returning their money—each situation was unique. Madewell maintained just enough phone contact or occasionally came to their homes to make it seem like his company would eventually replace their roofs. Because Madewell committed his crimes at different places, with different people, and on different days, his crimes are not

an episode of criminal conduct.[2]  *See Smith v. State*, 770 N.E.2d 290, 294 (Ind. 2002) (finding that the forgeries—which consisted of defendant stealing checks from victim and then depositing them at different banks in Marion County over the course of one afternoon—were not an episode of criminal conduct because they occurred "at a separate time, separate place and for a separate amount money from the other.").  Accordingly, the trial court did not err in imposing consecutive sentences pursuant to Section 35-50-1-2(c).

Affirmed.

RILEY, J., and MAY, J., concur.

---

[2] Similar to his sufficiency argument, *see supra* note 1, Madewell's actual argument on this issue is that the crimes constitute an episode of criminal conduct because "the State did not charge Madewell with committing the crimes when the contracts were actually made" and instead relied on only one fact— depletion of the checking accounts—to prove home-improvement fraud.  Appellant's Br. p. 10.  But as we already explained, because time is not of the essence for home-improvement fraud, the State was not limited to the dates in the charging information and could rely on the surrounding circumstances.