## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 28 2016, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carl G. Johnson, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 28, 2016 <br><br> Court of Appeals Cause No. 20A04-1511-CR-2080 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable David C. Bonfiglio, Judge <br><br> Trial Court Cause No. 20D06-1407-F6-55 |

**Barnes, Judge.**

# Case Summary

Carl Johnson, Jr. appeals his convictions for Level 6 felony residential entry and Class A misdemeanor resisting law enforcement. We affirm.

# Issues

The restated and consolidated issues before us are:

    I.    whether the evidence is sufficient to support Johnson's convictions; and

    II.    whether the trial court committed fundamental error by failing to *sua sponte* instruct the jury that criminal trespass is a lesser-included offense of residential entry and that consent is a defense to criminal trespass.

# Facts

On July 24, 2014, Michael Brown, his family, and his dog were in the kitchen of their Elkhart County residence when Brown heard the dog growl and saw the dog "bolt for the front door." Tr. p. 76. Brown then observed a man, who was later identified as Johnson, "enter the door and immediately exit." *Id.* Johnson admitted he did not have permission to enter Brown's house and that he, Johnson, opened Brown's door. Brown followed Johnson outside and asked him what he was doing. Johnson told Brown someone was trying to hurt him (Johnson), but declined Brown's offer to call the police. Johnson stated he had been using drugs and would get in trouble. Johnson left Brown's residence when Brown told him he was going to let the dog out of the house. Brown then contacted the police.

[4] Goshen Police Officer Michael Clere, who was in full uniform and driving a marked police car, responded to Brown's call. Officer Clere located Johnson walking approximately six blocks away from Brown's house. He asked Johnson if he was okay. Johnson stated he was. At some point during the conversation, someone set off fireworks nearby. Johnson, however, believed the sound was that of a gunshot, and he ran away. Officer Clere attempted to console Johnson and asked him to come back. When Johnson did not return, Officer Clere identified himself as a police officer and ordered him to stop. Johnson "just looked back and shook his head 'no.'" *Id.* at 58. Johnson admitted he did not stop when Officer Clere ordered him to stop: "No. I just, like I said, I kept runnin [sic] for my safety." *Id.* at 92. Officer Clere then pursued Johnson and located him on his knees in someone's yard with his hands up.

[5] The State charged Johnson with Level 6 felony residential entry, Class A misdemeanor resisting law enforcement by fleeing, and Class B misdemeanor false informing. On October 12, 2015, Johnson was tried by a jury. The jury was not instructed regarding the defense of consent to residential entry or the lesser-included offense of criminal trespass. Johnson did not submit those proposed instructions. The jury found Johnson guilty of residential entry and resisting law enforcement. The State dismissed the false informing charge. The trial court sentenced Johnson to 900 days in the Purposeful Incarceration Program for the residential entry conviction and a concurrent sentence of 365

days in the Department of Correction for the resisting law enforcement conviction.

# Analysis

## I. *Sufficiency of the Evidence*

[6] Johnson first contends the evidence was not sufficient to support his convictions.

> When reviewing a claim of insufficient evidence, an appellate court considers only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict. We do not reweigh the evidence or judge the credibility of witnesses. These evaluations are for the trier of fact, not appellate courts. In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented.

*Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (quotations omitted) (citations omitted).

## A. *Residential Entry*

[7] Although Johnson admitted he did not have permission to enter Brown's house, he contends that he had consent to do so: "Johnson's belief that, under the circumstances [someone was trying to hurt him], the homeowner would have consented to Johnson's entry of the homeowner's residence was reasonable." Appellant's Br. p. 14. Indiana Code Section 35-43-2-1.5 states

that a person commits residential entry if he "knowingly or intentionally breaks and enters the dwelling of another person . . . ."

> Lack of consent is not an element of the offense the State is required to prove. Rather, it is the defendant who must claim and prove the defense of consent. A defendant's belief that he has permission to enter must be reasonable in order for the defendant to avail himself of the defense of consent.

*Townsend v. State*, 33 N.E.3d 3367, 373 (Ind. Ct. App. 2015) (quotations omitted) (citations omitted), *trans. denied*.[1] "In order to establish that a breaking has occurred, the State need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry. The opening of an unlocked door is sufficient." *Young v. State*, 846 N.E.2d 1060, 1063 (Ind. Ct. App. 2006) (citations omitted).

[8] Johnson testified he opened the door to Brown's home. He testified: "I didn't have permission to enter his home." Tr. p. 91. Brown testified Johnson entered Brown's home. This evidence is sufficient to support Johnson's residential entry conviction. Johnson argues that he raised the consent of defense by presenting evidence that he believed someone was trying to hurt him. To the extent the jury understood that Johnson presented the defense of

---

[1] We note that *Townsend* discussed a prior version of Indiana Code Section 35-43-2-1.5, under which that crime was designated as a Class D felony. Although the current version of that statute defines the crime as a Level 6 felony, the elements of the crime are the same as they were under the version of the statute discussed in *Townsend*.

consent, it rejected that defense. It is not within our province to reweigh the evidence or assess the credibility of the witnesses.

## B.    *Resisting Law Enforcement*

Johnson next contends the evidence was not sufficient to support his conviction for resisting law enforcement by fleeing because "Johnson was not fleeing the officer but was running from what he thought were shots being fired at him . . . Johnson began running for security reasons and not because he was resisting law enforcement." Appellant's Br. p. 20. Indiana Code Section 35-44.1-3.1 defines resisting law enforcement as " knowingly or intentionally . . . flee[ing] from a law enforcement officer after the officer has, by visible or audible means . . . identified himself or herself and ordered the person to stop[.]"

Officer Clere testified that at the time of his encounter with Johnson he was driving a marked police vehicle and wearing a police uniform. During his testimony, Johnson acknowledged Officer Clere said, "Stop! Police!" Tr. p. 92. Johnson further testified that he did not stop when Officer Clere ordered him to. Instead, Johnson testified, "No [I did not stop]. I just, like I said, I kept runnin [sic] for my safety." *Id.*

This was sufficient evidence from which the jury could conclude beyond a reasonable doubt that Johnson resisted law enforcement by fleeing. In an effort to mitigate his actions, Johnson explained he believed he was in danger when he ran from Officer Clere. The jury had the opportunity to consider that

evidence and chose to convict Johnson. We may not reweigh the evidence or judge the witnesses' credibility in order to reach a different outcome.

## II. Jury Instructions

[12] Johnson contends the trial court committed fundamental error when it failed to *sua sponte* instruct the jury that criminal trespass is a lesser-included offense of residential entry and regarding the defense of consent.

> Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. In evaluating the issue of fundamental error, our task is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had *such an undeniable and substantial effect on the jury's decision* that a fair trial was impossible. Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel . . . .

*Miles v. State*, 51 N.E.3d 305, 310 (Ind. Ct. App. 2016) (citations omitted) (internal quotations omitted) (omission in original), *trans. denied*.

[13] It is well-established that "a trial court's failure to *sua sponte* give instructions on lesser-included offenses does not constitute fundamental error." *Lane v. State*, 953 N.E.2d 625, 630 (Ind. Ct. App. 2011). Instead, "the entitlement to included offenses instructions, in an appropriate case . . . is one that must be

claimed and the claim preserved, in accordance with established rules of trial and appellate procedure." *Helton v. State*, 273 Ind. 211, 213, 402 N.E.2d 1263, 1266 (Ind. 1980). Thus, Johnson's fundamental error argument, as it relates to the lack of an instruction that criminal trespass is a lesser-included offense of residential entry, fails.

[14] Johnson's argument with regard to an instruction on the defense of consent fails, too. "The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the trial court's refusal to give a tendered instruction for an abuse of that discretion." *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001). "[A] defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence. We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it." *Id.* (citations omitted). "A defendant's reasonable belief that he had permission of the dwelling's owner to enter is a defense to the charge of residential entry." *Webster v. State*, 708 N.E.2d 610, 614 (Ind. Ct. App. 1999), *trans. denied*.

[15] Johnson contends he presented consent as a defense to the residential entry charge. He argues, "there is a serious evidentiary dispute as to whether Johnson reasonably believe he would have consent to enter a house where he was running from people whom he believed would harm him." Appellant's Br. pp. 16-17. We note that the word "consent" does not appear anywhere in the transcript of Johnson's trial. Johnson did not testify he believed he had

Brown's permission to enter Brown's house; to the contrary, he testified "I didn't have permission to enter his home." Tr. p. 91. Johnson also answered, "Right," when the State asked him, "[Brown] did not answer the door and allow you into his home, correct?" *Id.* at 92. Although not evidence, it is telling that Johnson's attorney did not argue in his closing statement that Johnson reasonably believed he had Brown's permission to enter the house. Johnson would have been entitled to a jury instruction on his theory of defense, if in fact he presented any probative evidence to support that theory. Our review of the record reveals Johnson did not present any such evidence. As such, the trial court did not commit fundamental error by failing to *sua sponte* instruct the jury regarding the defense of consent.

# Conclusion

There was sufficient evidence from which the jury could conclude Johnson committed residential entry and resisting law enforcement by fleeing. The trial court did not commit fundamental error by failing to *sua sponte* instruct the jury that criminal trespass is a lesser-included offense of residential entry or that consent is a defense to residential entry. We affirm.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.